

# THE ATTORNEY GENERAL
## OF TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL.

AUSTIN 11, TEXAS

May 21, 1947

Hon. L. A. Woods
State Superintendent of Public Instruction
Department of Education
Austin, Texas

Opinion No. V-213

Re: Maximum price the State
may pay for school text-
books, and related fact
questions.

Dear Sir:

We refer to your letter of May 1, 1947, from which we quote in part:

"Article 2852, R. C. S., provides in part as follows: '. . . The maximum price at which the Texas State Text Book Commission shall contract to pay f.o.b. the Texas depository of the publisher, for any books to be used in the public schools of this State shall not exceed the minimum price at which the publisher sells such books in wholesale quantities, f.o.b. the publisher's publishing house, after all discounts have been deducted. . .'

"Section 4 of the Official Texas Textbook Contract Form prepared by the Attorney General's office provides as follows: 'It is hereby expressly stipulated that the prices hereby contracted to be paid the publisher f.o.b. its Texas depository for the books herein described and to be used in the public schools of this State shall never exceed the minimum price at which the publisher sells such books in wholesale quantities f.o.b. the publisher's publishing house, after all discounts have been deducted. The said

publisher covenants and agrees to
file in the office of the State Super-
intendent of Public Instruction be-
tween June 1 and June 15 of each year,
a sworn statement listing the lowest
net wholesale price and terms of sale
of all books herein contracted for
when sold to other states, counties,
dealers, depositories, schools, indivi-
dual purchasers, or other purchasers.
And the said publisher further cove-
nants and agrees that if at any time
during the period of this contract any
book or books herein named or any edi-
tions thereof substantially similar to
the official samples on file in the
office of the State Superintendent shall
be sold at a lower net wholesale price
f.o.b. publisher's shipping point to any
state, county, dealer, depositories,
school, individual, or others than the
price agreed upon in this contract,
then such lower price shall immediately
become the contract price between the
publisher and the State of Texas, pro-
vided the State desires to accept such
books in the revised or changed edition.'

"Two books were adopted in another
State in May, 1946 at a price of $.84
per copy for each of the books. The con-
tract was effective as of July 1, 1946.
In November, 1946 these same books as
far as content is concerned were offered
to the Texas State Board of Education
and a contract was awarded at $.90 per
copy for each of the two books. The only
differences we have been able to find in
the books offered in both states relates
to the design on the covers. The pagina-
tion is identical and the content the same.
The contract which was awarded by the Texas
State Board of Education is effective as
of September 1, 1947. We have only re-
cently discovered that the books were be-
ing supplied to another state at the present
time at the lower price. . .

"In view of the foregoing statutory

provisions and terms of the contractural
agreement, we desire to submit for your
consideration and request your opinion on
the following questions:

"1) Is the State of Texas entitled
to purchase these books at the price of
$.84 per copy which is the price at which
they are being supplied to public schools
in a neighboring state, or must the State
of Texas pay the price of $.90 stipulated
in its contract?

"2) If a textbook is under contract
in another state for a five-year period
at a stipulated price, may the State of
Texas contract to purchase this book or
substantially similar editions thereof at
a higher price at any time during the period
in which the book is under contract in the
other State?"

There being no statement in the submitted facts
to the contrary, we assume for the purposes of this opin-
ion that requirements, conditions and provisions of Arti-
cles 2842, as amended by Acts 1945, 2846, 2847, 2848,
2849, 2851, 2853, 2854 and 2856, V. C. S., have been met
and that there exists by reason thereof a contract ef-
fective September 1, 1947, as approved by the Board of
Education and the publisher of the two textbooks in ques-
tion executed in accordance with Article 2675b-5 and 2854,
V. C. S.

The price which the Board of Education may con-
tract to pay for textbooks adopted for use in the public
schools of Texas is governed by Article 2852, V. C. S.
It provides that the maximum price f.o.b. the Texas de-
pository of the publisher shall not exceed the minimum
price at which the publisher sells such book in whole-
sale quantities f.o.b. the publisher's publishing house,
after all discounts have been deducted. Furthermore,
it provides that any contract made for such book at a
higher price than the maximum herein fixed shall be void.

Section 4 of the Official Texas Contract Form,
hereinabove quoted, incorporates in substance the fixed
maximum price provision of Article 2852. Under said
contract form, the publisher further agrees that if at
any time during the period of the contract any books
named therein or substantially similar to the official
samples on file in the office of State Superintendent

shall be sold at a lower net wholesale price
f.o.b. publisher's shipping point to any State,
etc., than the price agreed upon in the con-
tract, then such lower price shall immediately
become the contract price between the publisher
and the State of Texas. (Emphasis ours)

It is our opinion that the phrase,
"minimum price at which the publisher sells such
book in wholesale quantities, f.o.b. the pub-
lisher's publishing place, after all discounts
have been deducted" as employed in Article 2852,
should be construed to mean that minimum price,
whatever it may be, as evidenced on the sample
copies of the books offered for sale and submitted
to the Board of Education pursuant to the pro-
visions of Article 2846, and on the basis of which
said offer the State Board of Education and the
publisher execute their contract.

If, in fact, on the date the contract
was consummated between the Board of Education
and the publisher, the publisher's minimum price
for the textbook in question, or books substan-
tially similar, is the lowest net price at which
they are sold or offered for sale in wholesale
quantities f.o.b. the publisher's publishing
house to other States, counties or other purchas-
ers, then, in our opinion, the price contracted
for is in conformity with the provisions of Arti-
cle 2852. If, however, subsequent to the con-
summation of the contract, the publisher offers
and sells said textbook, or substantially similar
books, at a lower net price than provided for in
the contract, then the terms of the contract spe-
cifically provide that such lower price shall
immediately become the contract price between the
publisher and the State of Texas.

Stated in another manner, we do not
believe that the minimum price clause in Article
2852 can properly be construed to mean that lowest
net price at which like textbooks were offered
and contracted for in wholesale quantities, f.o.b.
the publisher's publishing house, at a time prior
to that date when the like textbooks were offered
for sale to the State of Texas and on the basis
of which said offer a contract has been consummated.

Referring now to your first question based on facts submitted, if the publisher's minimum net sale price for the textbooks in question, or books substantially similar thereto, was 90¢ per copy for each of the books at the date the contract was consummated between the Board of Education and the publisher, the State must pay the price stipulated in the contract for books furnished thereunder, unless and until the publisher reduces its price when, under the terms of the contract, the lower price will immediately and automatically become the contract price between the State and the publisher.

Accordingly, our answer to your second question is in the affirmative assuming the contract made in the other State for a five-year period was consummated at a time prior to the Texas contract and assuming the lower minimum sales price offer of the publisher made to the other State was made at a time prior to the time it submitted its samples and bid to the State of Texas.

## SUMMARY

Based on the submitted facts, the State of Texas must pay 90¢ per copy per textbook or books substantially similar thereto as stipulated in its textbook contract, provided the contract price did not exceed the minimum price at which the publisher sold said book in wholesale quantities, f.o.b. the publisher's publishing house, after all discounts have been deducted, at the time the Board of Education and the publisher consummated the contract; and provided the publisher does not reduce its minimum price therefor during the term of the contract.

The existence of a long term contract between a publisher and another State providing for the sale of textbooks at a certain fixed price would not preclude the Texas State Board of Education from contracting with said publisher for similar textbooks at a higher price, when

the higher price at the time the
Board consummates the contract
does not exceed the minimum price
at which the publisher sells such
books in wholesale quantities, f.o.b.
the publisher's publishing house,
after all discounts have been de-
ducted.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By                Chester E. Ollison
                          Assistant

CEO:djm

APPROVED May 21, 1947

ATTORNEY GENERAL OF TEXAS